GILBERT GREEN, The (BUCKNOR v.). See Case No. 2,099.

GILBERT & BARKER MANUF'G CO. (CLOUGH v.). See Case No. 2,906.

GILBERT & BARKER MANUF'G CO. (MUNSON v.). See Case No. 9,934.

## Case No. 5,417.

### GILBERT & BARKER MANUF'G CO. v. TIRRELL.

[12 Blatchf. 144; 1 Ban. & A. 315; 8 O. G. 2 Merw. Pat. Inv. 214.] [1]

Circuit Court, S. D. New York. June 10, 1874.

PATENTS—NEW ARRANGEMENT —PATENTABILITY— VALIDITY OF CLAIM.

1. The chief feature of the improvement set forth in the letters patent granted to J. F. Barker and C. N. Gilbert, August 3d, 1869, for an "improved apparatus for carburetting air," is in the placing of the carburetter under ground, in a vault separate from the building to be lighted, at any desired or convenient distance therefrom, while the power and the motor, by means whereof atmospheric air is forced through pipes leading into the carburetter, are placed in an apartment in the building, or near thereto, conveniently accessible, with or without a light, as occasion may require, whenever, for adjusting the motive power, or the machinery thereof, it is desired to do so. Such isolation of the carburetter avoids danger from the explosion of the gas which escapes from it, and secures an even, regular supply of gas, from the carburetter, unaffected by changes of temperature above ground, and secures a preliminary condensation before the gas enters the distributing pipes. In this view, the new arrangement was patentable, and the claim, namely, "The arrangement of the carburetter with a meter-wheel, said wheel being driven by a descending weight, or other equivalent mechanical power, applied to force the air through the carburetter to the burners, said carburetter being placed within a vault, by itself, separate from the building to be lighted, the whole arranged and connected with pipes substantially as herein described and set forth," is valid.

2. The arrangement is not merely a change in the location of an old device. The vault described in the patent has surrounding walls, and a removable opening above, but the essence of the structure is not changed by placing the carburetter in a cavity below the ground, and surrounding it with earth in direct contact therewith, and making a communication, by a pipe from above, with the carburetter.

[This was a bill in equity by the Gilbert & Barker Manufacturing Company against Oakes Tirrell praying for an injunction and account.]

[1] [Reported by Hon. Samuel Blatchford, District Judge; reprinted in 1 Ban. & A. 315; and here republished by permission. Merw. Pat. Inv. 214, contains only a partial report.]

Edwin W. Stoughton and William Stanley, for plaintiff.

Edmund Wetmore, for defendant.

WOODRUFF, Circuit Judge. The bill herein is filed to restrain the infringement of letters patent [No. 93,268] granted to J. F. Barker and C. N. Gilbert, on the 3d August, 1869, for an "improved apparatus for carburetting air." By means of this apparatus it is claimed that gas is produced from petroleum and similar volatile oils employed for carburetting atmospheric air, thus rendering it combustible, light-producing, and suitable for lighting houses, manufactories, &c. Neither the process, nor the chief parts of the apparatus, are claimed to be new. The claim in the patent, which the defendant is charged with infringing, is in these words: "The arrangement of the carburetter with a meter-wheel, said wheel being driven by a descending weight, or other equivalent mechanical power, applied to force the air through the carburetter to the burners, said carburetter being placed within a vault, by itself, separate from the building to be lighted, the whole arranged and connected with pipes, substantially as herein" (i. e., in the specification) "described and set forth."

It appears, by the proofs, that, prior to the invention of the patentees, attempts to produce and bring into general use gas manufactured by forcing atmospheric air through or in contact with volatile oils, under such pressure that it was suitably impregnated or carburetted, were liable to two difficulties. The chief of these was, that, under any already devised arrangement, the danger of explosion, as an incidental result of the escape of gas from the carburetter, was very great; and this not only, per se, hindered its use, but made it difficult or impossible to procure insurance upon buildings so lighted. Another difficulty lay in the fact, that, on passing the gas from the carburetter through the distributing pipes, whenever the temperature of the pipes was lower than that of the carburetter, condensation occurred, which produced in the pipes not an obstruction merely, but a highly inflammable liquid, greatly inconvenient and dangerous. If an attempt was made to obviate these objections by locating the apparatus in apartments separate from the building lighted, there was a necessity to provide for the changes of temperature in our ever-varying climate, which was liable to cool the carburetter to a degree which made it practically inoperative, or, if the apartment was artificially heated, the danger of explosion was not avoided.

I shall not enter very fully or minutely into a discussion of the details of the patented apparatus, since most of them are confessedly old. The chief feature of the improvement is in the placing of the carburet-

ter under ground, in a vault separate from the building to be lighted, at any desired or convenient distance therefrom, while the power and the motor, by means whereof the atmospheric air is forced through pipes leading into the carburetter, are placed in an apartment in the building or near thereto, conveniently accessible, with or without a light, as occasion may require, whenever, for adjusting the motive power or the machinery thereof, it is desired to do so. Such apartment being thus wholly separated by walls or intermediate earth, or both, no gas from the carburetter pervades it, and no danger of explosion arises. Besides this result, which may be claimed to be purely incidental and, perhaps, not novel, because it would result from any mere separation of the two parts of the apparatus by placing them in different apartments, a most important result is effected in making such separation practicable, and, at the same time, providing an even, regular supply of the gas, by the carburetter, unaffected by changes of temperature above ground, and effecting, also, a preliminary condensation before the gas enters the distributing pipes, which relieves the operation of the apparatus from the objection secondly above named.

Three questions are hereupon raised. Was this new arrangement patentable? Was it new, and were the patentees the first inventors? Does the defendant infringe?

1. Upon the first question, it is insisted, that the patentees merely changed the location of the carburetter, and that the mere change in the location of an old device is not patentable. In Marsh v. Dodge & Stevenson Manuf'g Co. [Case No. 9,115], I had occasion to say, that "mere change of location is not invention." But it was also held, that "where change of location involves the employment of new devices to adapt an apparatus for use in the new position, and a beneficial result is produced, then this location, in its connection with such new devices —that is, the means by which the result is produced, and not the result itself—is patentable. And, where such change of location brings into existence a new combination of devices, operating, by reason of such new combination, to produce a new and useful result, such new combination is patentable." This illustrates the nature and patentable character of the arrangement described in the patent in this case. By the new arrangement, the patentees bring into contributory and effective co-operation with a carburetter, and the machinery for supplying atmospheric air thereto, the earth and its even temperature below the surface, and obtain protection from the efflux of gas from the carburetter, and its accumulation in the frequently visited location of the meter, and from the danger of consequent explosion, and also secure, by the passage of the gas from the carburetter through a cooler medium, the preliminary

condensation which makes the use of the gas in the building, and its passage through the distributing pipes, safe, convenient, and valuable. It is no impeachment of the patent to say that this is only making use of the natural state of the ground, or the natural laws which, operating below the surface, make such new location desirable, as a matter of mere judgment. It is more than that. It brings into conjoint operation and effect new elements, working actively, and also operating passively to produce the result, and to produce the ultimate and final result in a better manner—in a manner which combines safety with convenience and utility, as had never before been done. The most important inventions ever made consist in subordinating natural elements, or controlling natural laws, to the production of useful results. I cannot doubt that the invention of the patentees was patentable, as truly so as it is abundantly proved to be greatly useful and valuable.

2. The questions of fact—was this arrangement new, and were the patentees the first inventors—must be answered in the affirmative. I cannot, in a brief opinion, review in detail the evidence. I must content myself with saying that, after a careful examination of the testimony, and attention to the very full arguments of the counsel, the conclusion seems to me clear, that no prior devices or arrangement anticipated the patentees.

3. Does the defendant infringe? It was but feebly, if at all, insisted, that, if the arrangement of devices by the patentees was entitled to be called invention, and was patentable, as above explained, the defendant did not employ its distinguishing features or characteristics. The details in the construction of his carburetter were not precisely like those used by the complainant, but those specific features were not claimed. The substantial operation of his carburetter, and the mode of impregnating the atmospheric air, are alike in both. The difference between the apparatus of the defendant and that of the patentees, chiefly relied upon, is, that, whereas the latter make the cavity below the ground a vault having surrounding walls, the defendant, having inserted his carburetter in the cavity, surrounds it with earth in direct contact therewith, and carries up to the surface a pipe through which to replenish the carburetter with oil, instead of having a removable opening to the vault below, employed by the patentees. The substance of the invention, the defendant uses. The means of its effective useful operation are the same. The even, moderate temperature of the earth, the underground passage of the gas, and the effect thereof, are alike used in both. The difference in the construction of the carburetter used by the patentees, as described in the drawings, may make a more permanent opening about its sides desirable, but I cannot regard these details as of the

substance of the invention. The apparatus of the defendant does substantially operate by the same means, in the same way, and to produce the same result.

The complainant must have a decree for an injunction and account, in the usual form.

[For another case involving this patent, see Gilbert & Barker Manuf'g Co. v. Walworth Manuf'g Co., Case No. 5,418].